**In the Matter of Edward HOWARD and Shirley Howard, Debtors.**

**Nos. LR–71–B–134, 135.**

United States District Court, E. D. Arkansas, W. D.

June 22, 1971.

James L. Sloan, of Sloan, Ragsdale & Pate, Little Rock, Ark., for the Bankrupts.

Edward L. Wright, Jr., of Wright, Lindsey & Jennings, Little Rock, Ark., for Pulaski Federal Savings & Loan Assn.

A. L. Tenney, Little Rock, Ark., Trustee in Bankruptcy, pro se.

Memorandum and Order

HENLEY, Chief Judge.

These two companion cases, which arise under Chapter XIII of the Bankruptcy Act, 11 U.S.C.A. § 1001 et seq., are now before the Court on timely petitions for review of an order of the Referee affecting both cases. The debtors in the two cases are husband and wife who are joint owners of real estate covered by a mortgage in favor of petitioner, Pulaski Federal Savings & Loan Association of Little Rock, Arkansas. In such circumstances the cases will be treated as one.

On October 11, 1965, the debtors, Edward (Eddie) Howard and his wife, Shirley Ann Howard, were the owners of Lot 10, Block 9, Holead Addition to the Town of Levy, which is now incorporated into the City of North Little Rock. On that date they executed and delivered to petitioner a promissory note evidencing a debt in the principal amount of $4,500 which bore interest at the rate of $6\frac{1}{4}$ per cent per annum. The note was payable in monthly installments, including interest, amounting to $44.50 each payable on the 20th day of each month beginning with October 20, 1965. Payment of that note was secured by a real estate mortgage covering the property that has been described, which mortgage was duly filed for record and recorded.

Mr. and Mrs. Howard filed their Chapter XIII petitions on March 9, 1971, and the proceedings were duly referred to the Referee. Their schedules reflected ownership of the real estate which constituted their homestead and the security interest which petitioner held in the property.

On April 1, 1971, petitioner filed with the Referee a petition to exclude the Howard real estate and mortgage from the Chapter XIII proceedings. That petition recites that the Association had been served with an order enjoining it from commencing any suit against the Howards to foreclose the mortgage.

The first meeting of creditors was held on April 14. Counsel for petitioner appeared at that hearing. Counsel declined to file any claim or to participate in the proceedings and insisted that his exclusion petition be granted. He also apparently indicated that the Association would not accept payments on its obligation from the Trustee of the Debtor Estates.

In the course of the first meeting the plan was confirmed, and it provides that the debtors shall make the $44.50 monthly payments called for by the note and mortgage to the Trustee. The specific order with respect to which review is sought was entered by the Referee on April 22, as of which date it is inferable that the Association was threatening to foreclose its lien.

In his order the Referee found that there is an equity in the real estate in question; that the home of debtors is located on the property; that the debtors are capable of making the payment to the Trustee "as required by the plan;" and that foreclosure or eviction of the debtors from the home would adversely affect the plan and cause the collapse thereof to the detriment of all of the creditors. Those findings are not challenged by petitioner.

The Referee also found that the Association should be enjoined from foreclosing or attempting to foreclose on the real estate; that monthly payments should be made by the debtors to the Trustee who should "ear-mark and accumulate the payments" and "disburse the same to the Association if and when it elects to accept said money from the Trustee."

The order proper is as follows:

"ORDERED that the Pulaski Federal Savings and Loan Association should be, and hereby is, enjoined from attempting to foreclose its security conditioned (1) that the debtors pay monthly to the Trustee a sufficient sum to meet the monthly installment; (2) that the Trustee ear-mark and accumulate said payments; and (3) to disburse the same to the Loan Association at such time as it will accept the same from the Trustee."

The petition to review has been submitted to the Court on the Referee's certificate with attachments, a memorandum brief filed by counsel for petitioner, and a similar brief submitted by the Trustee.

As far as the injunctive aspect of the Referee's order is concerned, counsel for petitioner concedes that the bankruptcy court has jurisdiction in a Chapter XIII proceeding to enjoin a mortgagee from foreclosing its lien on the real estate of a wage earner if three conditions are met: (1) The injunction or stay must be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan. (2) The granting of the injunction must not impair the security of the lien. (3) The mortgagee must not be required to accept less than the full periodic payments called for by his contract with the debtor. Hallenbeck v. Penn Mutual Life Insurance Co., 4 Cir., 323 F.2d 566; In re Pizzolato, W.D. Ark., 281 F.Supp. 109; In re Garrett, N.D.Ala., 203 F.Supp. 459. See also Cheetham v. Universal C.I.T. Corporation, 1 Cir., 390 F.2d 234; First National Bank v. Cope, 1 Cir., 385 F.2d 404; In re Rutledge, E.D.Ark., 277 F.Supp. 933; In re Pizzolato, W.D.Ark., 268 F. Supp. 353. And it does not appear to the Court that counsel is seriously quarreling with the injunction issued by the Referee. The real complaint of petitioner is that the debtors are permitted under the plan to make the payments to the Trustee and that petitioner is required to receive the monthly payments from the Trustee rather than from the debtors themselves.

The petition for review and petitioner's brief in support of the position do not disclose any particular motive for petitioner's objection to receiving its money through the office of the Trustee rather than from Mr. or Mrs. Howard. Petitioner seems simply to be taking a fundamental legal position that in a Chapter XIII proceeding a holder of real estate security cannot be required to "participate" in the plan, and that receipt of payments through the Trustee amounts to "participation." Petitioner, of course, has a right to take the position if it chooses to do so, and the question for decision is whether the position is sound.

It is quite true, as petitioner postulates, that for Chapter XIII purposes a "claim" does not include a claim secured by an estate in real property or in a chattel real, and for that reason the holder of real estate security is not a "creditor" within the meaning of Chapter XIII. 11 U.S.C.A., § 1006(1) and (2). Going a step further with petitioner, the Court will agree that a creditor holding real estate security cannot be forced to "participate" in a Chapter XIII plan. Indeed, claims secured by liens on real estate are completely outside the scope of Chapter XIII, and any consensual participating of a holder of such lien in a Chapter XIII plan, while it would probably not be "illegal", would be "extra-legal." See Hallenbeck v. Penn Mutual Insurance Co., supra.

The status of a holder of chattel security under Chapter XIII is somewhat different. His claim is a "claim" and he is a "creditor" within the definitions appearing in 11 U.S.C.A. § 1006, and a Chapter XIII plan may "deal with" his secured claim. 11 U.S.C.A. § 1046. However, if the plan does deal with his claim, the plan cannot be confirmed without his approval. 11 U.S.C.A. § 1052(1). And a plan probably may safely be assumed to "deal with" a secured claim if it materially and adversely affects it. See 11 U.S.C.A., § 1007, and Cheetham v. Universal C.I.T. Credit Corporation, supra, 390 F.2d at 236.

But, while the holder of real estate security cannot be forced to participate in a wage earner plan, and while the holder of chattel security is not required in a Chapter XIII case to submit to having his secured claim "dealt with" or "adversely and materially" affected by the debtor's plan without the creditor's consent, it does not follow that either a holder of real estate security or a holder of chattel security is immune from all inconvenient contact with the

bankruptcy court in a Chapter XIII context. The cases that have been cited, and others that might have been, establish the contrary. As noted by the Court in *Cheetham*, supra, 390 F.2d at 238, f. n. 6, non-assenting secured creditors may be required to tolerate a number of things when their debtors file wage earner petitions in the bankruptcy court. Principally, as has been seen, creditors having liens on either real or personal property may, in proper cases, be restrained from foreclosing their liens if the wage earner plan adequately assures them of receiving their money in conformity with the terms of their contracts.

In re Garrett, supra, distinguishes between the action of a bankruptcy court in enjoining foreclosure of a real estate mortgage and the action of such a court in confirming over the objection of the mortgagee a Chapter XIII plan calling for monthly payments on the mortgage to be made to the Trustee rather than to the creditor; and it was held in that case that the bankruptcy court had the power to take the former action but not to take the latter. Thus, *Garrett* supports the position of the petitioner. However, the Court is not bound by that decision and is not disposed to follow that portion of it which is favorable to petitioner.

Apart from any question of precedent and approaching the problem from a practical standpoint, it should not make a particle of difference to a mortgagee whether he gets his monthly payments from the Trustee of Debtor Estates or whether he gets them from the debtor, provided that he gets them and gets them on time, and provided that if one or more installments are not paid when due, he may proceed against the security. The creditor does not in any real sense "participate" in the plan merely because he may receive his payments from the Trustee rather than from the debtor.

Such a receipt involves nothing more than a recognition on the part of the creditor that there is a plan, and that it is being administered by the bankruptcy court and the officers of that court. Depending on circumstances, one plan may call for the payments to be made directly to the creditor, as in *Rutledge*, supra; another may call for payments to be made initially to the Trustee as in *Pizzolato*, supra.

Here, the plan that was confirmed by the Referee contemplates that full monthly payments will be made to petitioner. The Court will assume that the plan contemplates that the payments will be remitted to petitioner on time and without default or delay. And, the Court also assumes that if defaults or delays occur, the Referee's injunction against foreclosure will be dissolved. If either or both of those assumptions turn out to be invalid, petitioner can apply to the Referee for appropriate relief, and if its application is denied, it can seek review of the denial.

The Referee's order of April 22, 1971, will be, and is, affirmed, and the petition for review will be, and is, overruled and dismissed.